# EXHIBIT C

Order Denying Plaintiffs' Motion for Preliminary Injunction

# EXHIBIT C

Electronically Filed
9/29/2020 8:29 AM
Steven D. Grierson
CLERK OF THE COURT

**ORDR**
AARON D. FORD
  Attorney General
Gregory L. Zunino (Bar No. 4805)
  Deputy Solicitor General
Office of the Attorney General
100 N. Carson Street
Carson City, NV 89701
(775) 684-1237 (phone)
(775) 684-8000 (fax)
gzunino@ag.nv.gov

*Attorneys for Defendant*

## DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| THE ELECTION INTEGRITY PROJECT OF NEVADA, a Nevada LLC; SHARRON ANGLE, an individual,<br><br>                    Plaintiffs,<br><br>    v.<br><br>THE STATE OF NEVADA, on relation of BARBARA CEGAVSKE, in her official capacity as Nevada Secretary of State,<br><br>                    Defendants,<br><br>and<br><br>INSTITUTE FOR A PROGRESSIVE NEVADA; and PROGRESSIVE LEADERSHIP ALLIANCE OF NEVADA,<br><br>       Proposed Intervenor-Defendants. | CASE NO. A-20-820510-C<br>DEPT. NO. XXXII<br><br>HEARING DATE: September 17, 2020<br>HEARING TIME: 11:00 a.m. |

**ORDER DENYING PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION**

On September 3, 2020, Plaintiffs the Election Integrity Project of Nevada, a Nevada limited-liability company, and Sharron Angle, an individual (Plaintiffs), by and through their counsel, Joel F. Hansen, Esq., filed an application for an emergency preliminary injunction, followed on September 4, 2020, by an application for an emergency temporary

restraining order. Plaintiffs requested an order enjoining the implementation of Assembly Bill No. 4 of the 32nd Special Session (2020) of the Nevada Legislature. *See* Act of August 3, 2020, ch. 3, 2020 Nev. Stat. 18, §§ 1–88 (AB 4). AB 4 adopts vote-by-mail election processes for the 2020 general election.

The Court held a hearing on September 17, 2020. The hearing was conducted by videoconference. Joel F. Hansen, Esq., appeared for Plaintiffs. Gregory L. Zunino, Deputy Solicitor General, appeared for Defendants State of Nevada, on relation of Barbara Cegavske, in her official capacity as Nevada Secretary of State (Defendants). Abha Khanna, Esq., with the law firm of Perkins Coie, LLP, and Bradley Schrager, Esq., and Daniel Bravo, Esq., both with the law firm of Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP, appeared for Proposed Intervenor-Defendants Institute for a Progressive Nevada and Progressive Leadership Alliance of Nevada. The purpose of the hearing was to address the merits of Plaintiffs' request for an emergency preliminary injunction in advance of the 2020 general election. The Court treated Plaintiffs' separate applications for injunctive relief as a single motion for a preliminary injunction. The Court heard arguments from Mr. Hansen, Mr. Zunino, and Ms. Khanna. The Court also addressed Proposed Intervenor-Defendants' motion to intervene. The Court heard arguments from Mr. Hansen and Ms. Khanna. Defendants did not object to Proposed Intervenor-Defendants' motion to intervene. Lastly, the Court addressed Ms. Khanna's motion to appear *pro hac vice*. No party objected to Ms. Khanna's motion.

Upon review of the papers and pleadings on file herein, the arguments of counsel, and good cause appearing, Ms. Khanna's motion to appear *pro hac vice* is GRANTED; Proposed Defendant-Intervenor's motion to intervene is GRANTED; and Plaintiffs' motion for a preliminary injunction is DENIED.

**FINDINGS OF FACT**

1. Plaintiffs filed their complaint on September 1, 2020, less than one month before the first ballots are scheduled to be mailed to voters in Douglas, Elko, Esmeralda, Lander, and Lincoln Counties. Ballots are scheduled to be mailed to the voters in Nevada's

other counties during the first two weeks in October. Plaintiffs requested an order enjoining the mailing of the ballots in advance of the November 3, 2020 general election. Plaintiffs argue that AB 4 is unconstitutional for a variety of reasons, principally because it makes Nevada's election system vulnerable to voter fraud.

2. Plaintiff Sharron Angle is a longtime Nevada resident, a Nevada registered voter, a former Nevada legislator, a former Republican Party nominee and candidate for the U.S. Senate, and the head of Plaintiff the Election Integrity Project of Nevada, a nonprofit organization which advocates for measures to protect the integrity of Nevada's elections.

3. Together, Plaintiffs challenge various provisions of AB 4 on the ground that they make Nevada's election system vulnerable to voter fraud, thus diluting the value of the "honest" votes lawfully cast by Nevada's qualified electors. Plaintiffs cite *Bush v. Gore*, 531 U.S. 98, 121 S. Ct. 525 (2000) (*per curiam*), and *Reynolds v. Sims*, 377 U.S. 533, 84 S. Ct. 1362 (1964), as support for the proposition that the alleged injury of "vote dilution" suffices to establish a person's standing to bring an equal protection challenge to a state's election laws. Plaintiffs bring their challenge under Article 4, Section 21 of the Nevada Constitution. Plaintiffs acknowledge that the equal protection guarantees of the Nevada Constitution are coextensive with the guarantees of the Equal Protection Clause of the Fourteenth Amendment. Accordingly, Plaintiffs cite federal case law in support of their position that AB 4 violates the Nevada Constitution.

4. Plaintiffs represent that they are especially concerned about AB 4 because it directs local election officials to mail ballots, unsolicited, to all of Nevada's active registered voters. AB 4's directive to mail ballots to all active, registered voters is in addition to its directive to establish a specified minimum number of physical polling places in each county. Plaintiffs allege that this significantly increases the risk of voter fraud by distributing a large number of ballots to persons whose identities cannot be properly verified. According to Plaintiffs, vote-by-mail processes increase the probability that ballots will be intercepted by fraudsters.

5. Plaintiffs further allege that Defendants' alleged failure to properly conduct list maintenance exacerbates the problem. "List maintenance" refers to the process of removing the names of ineligible voters from the voter rolls. This includes removing the names of deceased persons, persons who have moved out of state, persons who have duplicated their voter registration status by filing two or more registration forms, and others who, for a variety of reasons, may be legally ineligible to vote or legally ineligible to receive an unsolicited ballot in the mail.

6. Additionally, Plaintiffs allege that certain provisions of AB 4 contribute to the disparate treatment of voters. These include provisions of AB 4 that direct local election officials to establish a minimum number of physical polling locations within each of their respective counties. *See* §§ 11 and 12. Plaintiffs argue that the minimum number of polling locations in each county is not proportional, on a per-capita basis, to the minimum number of polling locations in each of the other counties. According to Plaintiffs, this results in the disparate treatment of voters from one county to the next. Moreover, Plaintiffs argue that vote counting procedures and postmark presumptions improperly extend traditional time frames for processing and counting votes, thus increasing the probability that unlawful votes will be counted during these extended time frames. *See* §§ 20, 22–27, 39, 48–49, 69 and 79.

7. Finally, Plaintiffs allege that AB 4: (1) repealed a criminal prohibition against "ballot harvesting" and replaced it with new provisions that fail to adequately deter voter intimidation, *see* § 21; (2) is not otherwise complemented by sufficiently robust anti-fraud statutes, including signature verification requirements, *see* §§ 29, 39 and 69; and (3) operates in tandem with in-person voting provisions that are similarly vulnerable to voter fraud. These latter provisions of the statute authorize same-day voter registration, *see* NRS 293.5772–5792, and provide for "vote centers" where voters can appear in person outside of traditional precinct boundaries to cast their ballots, *see* NRS 293.3072–3075.

8. In support of their arguments, Plaintiffs rely upon anecdotes from other states and public reports purporting to identify a correlation between increased instances of voter

Page 4 of 15

fraud and mail-in voting. They also rely upon public data concerning the 2020 primary election in Nevada. This data indicates that a significant percentage of mail-in ballots were returned to Nevada's local election officials as undeliverable. The largest percentage of returned ballots, roughly 17%, was attributable to Clark County, where election officials mailed ballots to both active and inactive registered voters. As AB 4 pertains to the 2020 general election, the bill directs election officials to mail ballots to active registered voters only. *See* § 15.

9. Finally, in terms of providing support for their allegations, Plaintiffs rely on a self-conducted analysis of public records indicating that voter rolls contain names that should not appear on the rolls because the named persons are deceased, "inactive" or otherwise ineligible to vote or receive an unsolicited ballot in the mail. The Secretary of State's office responds that when conducting list maintenance, it uses different records than those evaluated by Plaintiffs, and makes a diligent effort to maintain accurate voter registration lists.

10. In addition to their election-related allegations, Plaintiffs allege that AB 4 contains an "unfunded mandate" to Nevada's local governments. More specifically, Plaintiffs allege that the Nevada Legislature did not appropriate sufficient funds to cover the local costs of mailing ballots to voters. Plaintiffs allege that this violates NRS 354.599.

11. The Nevada Legislature adopted AB 4 on the basis of its finding that "[t]he State of Nevada faces a substantial and continuing danger that the occurrence or existence of an emergency or disaster in this State will adversely affect the public's health, safety and welfare and the ability of elections officials to prepare for and conduct an affected election safely and securely under such circumstances." § 2. Sections 2 to 27 of AB 4 apply to any election occurring during a declared state of emergency or disaster, including the 2020 general election. *See* §§ 5 and 8. Section 10(1) of AB 4 states that the legislation "must be liberally construed and broadly interpreted" to achieve its goal of enfranchising voters during the COVID-19 pandemic. § 10(1).

12. Proposed Intervenor-Defendants filed their motion to intervene on September 10, 2020. Proposed-Intervenor Defendants argue that they are entitled to intervene as of right pursuant to NRCP 24(a), and alternatively, request that the Court grant permissive intervention pursuant to NRCP 24(b).

13. To the extent any finding of fact is more appropriately characterized as a conclusion of law, it is incorporated as such below.

## CONCLUSIONS OF LAW

**A.  Intervention Standard of Review**

1. To intervene as of right under NRCP 24(a)(2), an applicant must meet four requirements:

> (1) that it has a sufficient interest in the litigation's subject matter, (2) that it could suffer an impairment of its ability to protect that interest if it does not intervene, (3) that its interest is not adequately represented by existing parties, and (4) that its application is timely.

*Am. Home Assurance Co. v. Eighth Jud. Dist. Ct. ex rel. County of Clark*, 122 Nev. 1229, 1238, 147 P.3d 1120, 1126 (2006). "In evaluating whether Rule 24(a)(2)'s requirements are met," courts "construe the Rule 'broadly in favor of proposed intervenors' . . . . because '[a] liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts.'" *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (second alteration in original) (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 397–98 (9th Cir. 2002)).

2. Under NRCP 24(b), the Court may grant permissive intervention if the applicant "has a claim or defense that shares with the main action a common question of law or fact." NRCP 24(b)(1)(B). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." NRCP 24(b)(3); *accord Hairr v. First Jud. Dist. Ct.*, 132 Nev. 180, 186–88, 368 P.3d 1198, 1202–03 (2016).

3.      Because NRCP 24 and Federal Rule of Civil Procedure 24 are "equivalent," *Lawler v. Ginochio*, 94 Nev. 623, 626, 584 P.2d 667, 668 (1978), "[f]ederal cases interpreting [Rule 24] 'are strong persuasive authority.'" *Exec. Mgmt., Ltd. v. Ticor Title Ins. Co.*, 118 Nev. 46, 53, 38 P.3d 872, 876 (2002) (quoting *Las Vegas Novelty, Inc. v. Fernandez*, 106 Nev. 113, 119, 787 P.2d 772, 776 (1990)).

## B.     Intervention as of Right

4.      Proposed Intervenor-Defendants (Intervenor-Defendants) satisfy NRCP 24(a)'s requirements for intervention as a matter of right. First and second, Intervenor-Defendants have significantly protectable interests in this lawsuit that might be impaired by Plaintiffs' causes of action. "A 'significantly protectable interest' . . . is protected under the law and bears a relationship to the plaintiff's claims." *Am. Home Assurance Co.*, 122 Nev. at 1239, 147 P.3d at 1127 (quoting *Donaldson v. United States*, 400 U.S. 517, 531, 91 S. Ct. 534, 542 (1971)). In assessing whether such an interest is sufficiently "impair[ed] or impede[d]," NRCP 24(a)(2), courts "look[] to the 'practical consequences' of denying intervention." *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977) (quoting *Nuesse v. Camp*, 385 F.2d 694, 702 (D.C. Cir. 1967)). "Once an applicant has established a significantly protectable interest in an action, courts regularly find that disposition of the case may, as a practical matter, impair an applicant's ability to protect that interest." *Venetian Casino Resort, LLC v. Enwave Las Vegas, LLC*, No. 2:19-CV-1197 JCM (DJA), 2020 WL 1539691, at *3 (D. Nev. Jan. 7, 2020) (citing *California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006)).

5.      Plaintiffs' challenge to AB 4 would impair Intervenor-Defendants' legally protected interests. If Plaintiffs succeed in their suit, then the various provisions of AB 4 designed to help Nevadans vote—such as the use of third-party ballot collection, reforms to the election code's signature matching rules, and proactive distribution of mail ballots during the November Election—will be struck down. The result would be potential disenfranchisement for those Nevada voters who are unable, due to the ongoing pandemic

and other issues, to safely cast ballots. This would implicate and impair Intervenor-Defendants' interests in improving voter turnout in Nevada.

6. Intervenor-Defendants possess organizational interests that are threatened by Plaintiffs' lawsuit. They are nonpartisan organizations dedicated to promoting civic engagement and expanding the franchise. If AB 4 were enjoined, then Intervenor-Defendants would divert resources from their other activities to remedy restricted voting opportunities.

7. Third, Intervenor-Defendants have demonstrated that they cannot rely on the parties in this case to adequately represent their interests. While the Secretary of State has an undeniable interest in defending the actions of state government, Intervenor-Defendants have a different focus: upholding the specific measures in place in AB 4, which they advocated for by testifying in support of AB 4. AB 4 furthers Intervenor-Defendants mission to ensure that every voter in Nevada has a meaningful opportunity to cast a ballot and have that ballot counted, both in November and in future elections. In other words, while the Secretary of State has an interest in defending Nevada's election laws generally, Intervenor-Defendants have a specific interest in upholding *this* newly enacted law.

8. Fourth, the motion is timely. Plaintiffs filed their complaint on September 1, 2020. Intervenor-Defendants filed their motion to intervene less than two weeks later, before any substantive activity in the case. There has therefore been no delay, and no possible risk of prejudice to the other parties.

**C. Preliminary Injunction Standard of Review**

9. Plaintiffs request a preliminary junction against the implementation of AB 4. Plaintiffs specifically request an injunction against AB 4's directive to local election officials that they mail ballots to all active, registered voters in the state of Nevada. *See* § 15. To obtain a preliminary injunction, Plaintiffs must show (1) a likelihood of success on the merits and (2) a reasonable probability that the alleged conduct on the part of state and county election officials, if allowed to continue, will cause irreparable harm for which compensatory damage is an inadequate remedy. *Univ. & Cmty. Coll. Sys. v. Nevadans for*

*Sound Gov't*, 120 Nev. 712, 721, 100 P.3d 179, 187 (2004). "In considering preliminary injunctions, courts also weigh the potential hardships to the relative parties and others, and the public interest." *Id.*, 100 P.3d at 187.

**D.    Standing**

10. Defendants and Intervenor-Defendants argue that Plaintiffs do not have standing to bring their claims. To establish jurisdiction, generally, a party must show a personal injury and not merely a general interest that is common to all members of the public to have standing to file suit. *See Schwartz v. Lopez*, 132 Nev. 732, 743, 382 P.3d 886, 894 (Nev. 2016). In the context of challenging the constitutionality of a statute, the Nevada Supreme Court has held that a party must suffer harm fairly traced to the statute that invalidating it would redress. *Elley v. Stephens*, 104 Nev. 413, 416–17, 760 P.2d 768, 770 (1988).

11. In *Schwartz*, however, the Nevada Supreme Court recognized a "public-importance" exception to the injury requirement of Nevada's standing doctrine. 132 Nev. at 743, 382 P.3d at 894. "Under this public-importance exception, [the Court] may grant standing to a Nevada citizen to raise constitutional challenges to legislative expenditures or appropriations without a showing of a special or personal injury." *Id.*, 382 P.3d at 894. To qualify for the exception, a case must involve an issue of significant public importance, it must involve a challenge to a legislative expenditure or appropriation as violating a specific provision of the Nevada Constitution, and it must be commenced by a plaintiff who is in an ideal position to bring the action and who is capable of fully advocating that position in court. *Id.*, 382 P.3d at 894–95.

12. The Court finds that Plaintiffs satisfy the first and the third parts of the three-part inquiry stated above. The topics of election integrity and voting rights are vitally important to the public, and Plaintiffs are qualified to represent the interests of voters who are concerned about the integrity of Nevada's election system. The second part of the inquiry is also satisfied. AB 4 requires an expenditure of public funds in excess of that which would ordinarily be required to conduct an election. Plaintiffs have challenged

AB 4 for that reason, among others. Therefore, the Court finds that Plaintiffs have standing to bring their challenge pursuant to the public-importance exception.

### E. Speculative Injuries

13. Defendants argue that Plaintiffs' claims are not ripe for review. Nevada requires litigated matters to present an existing controversy, not merely the prospect of a future problem, for them to be ripe for judicial determination. *Resnick v. Nev. Gaming Comm'n*, 104 Nev. 60, 65–66, 752 P.2d 229, 232 (1988). To demonstrate ripeness, Plaintiffs must demonstrate that "harm is likely to occur in the future because of a deprivation of a constitutional right." *Id.* at 66, 752 P.2d at 233.

14. In a pre-election challenge to election laws, the "harm alleged by the party seeking review [must be] sufficiently concrete, rather than remote or hypothetical, to yield a justiciable controversy." *Herbst Gaming, Inc. v. Heller*, 122 Nev. 877, 887, 141 P.3d 1224, 1231 (2006). "Alleged harm that is speculative or hypothetical is insufficient: an existing controversy must be present." *Id.*, 131 P.3d at 1231. Though well taken, the concerns raised by Plaintiffs here are insufficiently concrete to yield a justiciable controversy as required by Nevada's ripeness doctrine. The Court agrees with Defendants that Plaintiffs election-related claims are not ripe for review.

15. Defendants and Intervenor-Defendants argue that Plaintiffs have failed to demonstrate that AB 4 will result in irreparable harm. For the same reasons that this case is not ripe for review, Plaintiffs fail to demonstrate irreparable harm as a necessary predicate for obtaining a preliminary injunction. Plaintiffs' unfounded speculations regarding voter fraud fall short of the "substantial evidence" required to obtain injunctive relief. *Shores v. Glob. Experience Specialists, Inc.*, 134 Nev. 503, 507, 422 P.3d 1238, 1242 (2018). Although Plaintiffs argue that certain provisions of AB 4 will make Nevada's voting system susceptible to illegitimate votes, Plaintiffs present no concrete evidence that such events will occur. For example, Plaintiffs allege that Defendants' failure to properly conduct list maintenance exacerbates the problem, but cite no authority or evidence to

support their ultimate conclusion that these alleged failures will lead to voter fraud.[1]  It is not enough for Plaintiffs to simply identify problems with Defendants' list maintenance; Plaintiffs bear the burden of demonstrating that these alleged problems will indeed likely lead to voter fraud.

16. The Court also finds that existing criminal prohibitions against voter fraud, voter intimidation and related offenses, *see* NRS 293.700–800, provide an adequate deterrent to election-related crime.  For these reasons, Defendants have not put forth sufficient evidence to demonstrate that AB 4 will result in irreparable harm.

**F.     Probability of Success on the Merits**

17. Just as they must show irreparable harm as a condition of obtaining a preliminary injunction, Plaintiffs must show a reasonable probability of success on the merits.  As a general proposition, Plaintiffs allege that AB 4 violates the equal protection guarantees of Article 4, Section 21 of the Nevada Constitution.  Plaintiffs allege that AB 4 violates equal protection because it increases the risk of voter fraud, thus diluting honest votes.  The Court finds that Plaintiffs' challenge is governed by a rational basis standard of review.

18. "Under the rational basis standard, legislation will be upheld so long as it is rationally related to a legitimate governmental interest." *Williams v. State*, 118 Nev. 536, 542, 50 P.3d 1116, 1120 (2002).  Applying the rational basis standard here is consistent with the federal standard governing elections: "[W]hen a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick v. Takushi*, 504 U.S. 428, 434, 112 S. Ct. 2059, 2063 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788, 103 S. Ct. 1564, 1570 (1983)).

---

[1] In addition, the Secretary of State's office uses different records than those evaluated by Plaintiffs, calling into question the accuracy of Plaintiffs' findings.

19. Given the COVID-19 pandemic, the Nevada Legislature was faced with the daunting challenge of fully enfranchising voters while maintaining the integrity of the election process. Under current circumstances, AB 4 reflects a reasonable decision to adopt vote-by-mail processes as a means of enfranchising voters who might have justifiable health concerns if they vote at in-person polling locations. The full text of AB 4 reveals that Nevada's legislators acted reasonably and in good faith to strike an appropriate balance between election integrity concerns, public health concerns, and voter access concerns. This decision is particularly reasonable considering the record voter participation in the June 2020 primary election in Nevada, with 491,654 Nevadans participating—and 98.4 percent of those voters returning their ballots by mail.[2] At the same time, the Nevada Legislature kept in place the numerous fail-safes embedded in Nevada law to prevent and detect voter fraud and ensure the integrity of Nevada's elections. AB 4 largely incorporates and supplements the State's existing election code to safeguard the franchise in November and during future crises.

20. With respect to Plaintiffs' claims about specific provisions of AB 4, Sections 11 and 12 reasonably allocate polling locations based on each county's population. The Nevada Legislature had numerous plausible policy reasons to allocate polling places in AB 4 according to each county's total population—including long lines experienced in the State's most populous counties during the June Primary, and the fact that Nevada's same-day registration law means that polling locations serve all potential voters, not just those who are registered. *See* NRS 293.5842. Additionally, Sections 11 and 12 require only that a *minimum* number of physical polling locations be placed in each of Nevada's counties. Sections 11 and 12 do not preclude local election officials in rural or urban counties from

---

[2] *2020 Primary Election Turnout*, Nev. Sec'y of State, https://www.nvsos.gov/sos/home/showdocument?id=8686 (June 19, 2020). By comparison, the 2016 primary election—the last to be held in a presidential election year—saw 240,213 Nevadans participate, with just 10.5 percent of voters returning their ballots by mail. *2016 Primary Election Turnout: In Person Early Voting, Absent, and Mailing Precincts*, Nev. Sec'y of State, https://www.nvsos.gov/sos/home/showdocument?id=4310 (June 23, 2016).

establishing a greater number of physical polling places than the required minimums. Far from discriminating against the voters in any particular county, Sections 11 and 12 give local election officials the flexibility to adapt to local needs and conditions based upon historical trends and projected in-person turnout for the 2020 general election.[3] Sections 11 and 12 do not, as Plaintiffs contend, constitute "arbitrary and capricious action" on the part of the Legislature, *Reynolds*, 377 U.S. at 557, 84 S. Ct. at 1379 (quoting *Baker v. Carr*, 369 U.S. 186, 226, 82 S. Ct. 691, 715 (1962)), or fail to meet the "rudimentary requirements of equal treatment and fundamental fairness." *Bush*, 531 U.S. at 109, 121 S. Ct. at 532. Therefore, there is a rational basis for the provisions of Sections 11 and 12.

21.  Likewise, there is a rational basis for Section 20(2) of AB 4. Section 20(2) establishes a presumption that a mailed ballot received within three days after the election was cast on or before the date of the election if the ballot envelope bears no postmark or an illegible postmark. Plaintiffs argue that Section 20(2) effectively pushes back the date of the election, as mandated by federal law, thus diluting timely cast votes with late-cast votes. The Court accepts Defendants' representation that the U.S. Postal Service has adopted a policy of affixing postmarks to all election-related mail, including ballots, even though it generally does not affix postmarks to prepaid mail. This makes it highly unlikely that a late-cast ballot will be counted. For a late-cast ballot to be counted, the ballot would have to be mailed on November 4 or later, and arrive by November 6 without a legible postmark, or with no postmark at all. This is highly improbable. On the other hand, it is reasonably likely that a timely mailed ballot will arrive without a legible postmark during the window of time between November 4 and November 6. Section 20(2) ensures that such votes will be counted.

---

[3] In fact, several smaller rural counties have already announced their plans to open additional polling places for election day. Elko County, for example, intends to provide seven polling locations on election day, while Nye County will have at least five locations open. *See 2020 General Election & Polling Locations*, Nev. Sec'y of State, https://www.nvsos.gov/sos/elections/election-day-information (last visited Sept. 21, 2020).

22. Plaintiffs are also unlikely to succeed on their challenges to the other sections of AB 4, specifically, Sections 22 through 27, 39, 48 through 49, 69, and 79 through 80. As explained, Plaintiffs have failed to provide evidence of any injury resulting from these provisions of AB 4. NRS 33.010 (injunctive relief only available when the challenged action "would produce great or irreparable injury to the plaintiff").

23. For these reasons, Plaintiffs are unlikely to prevail upon their merits of their challenge to AB 4.

**G.  Public Interest**

24. Plaintiffs must also demonstrate that the public interest would be served if AB 4 were enjoined. "By definition, '[t]he public interest . . . favors permitting as many qualified voters to vote as possible.'" *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014) (alteration in original) (quoting *Obama for Am. v. Husted*, 697 F.3d 423, 437 (6th Cir. 2012)). Nevada's Legislature enacted AB 4 to ensure that all eligible Nevadans can "safely and securely" access the franchise during the COVID-19 pandemic. § 2(1). The Court accepts Defendants' representation that the Secretary of State has already begun notifying Nevadans about how to vote in the November Election pursuant to the provisions of AB 4. Granting Plaintiffs' request to upend AB 4 at this late date would negatively impact and disrupt the election process that is already under way and would disenfranchise voters who have relied on the notices of an all-mail election.

**F.  Unfunded Mandate**

25. Policy choices and value determinations that are constitutionally committed to other branches are political questions outside the purview of judicial review. *N. Lake Tahoe Fire Prot. Dist. v. Washoe Cnty. Bd. of Cnty. Comm'rs*, 129 Nev. 682, 687, 310 P.3d 583, 587 (2013). Plaintiffs challenge AB 4 on the ground that it contains an unfunded mandate to local governments. The challenge seeks to alter the allocation of public funds, and ultimately the cost burdens, between state and local units of governments. The manner of allocating funds and cost burdens between state and local units of government is a legislative function, not a judicial function. Therefore, the Court finds that Plaintiffs'

1 claim concerning the alleged unfunded mandate of AB 4 is not justiciable. For the same
2 reason, the Court finds that NRS 354.599 does not confer a private right of action upon
3 Plaintiffs.

4       26.    To the extent any conclusion of law is more appropriately characterized as a
5 finding of fact, it is incorporated as such above.

6       **NOW THEREFORE,** the Court **GRANTS** the motion to appear *pro hac vice* filed
7 by Abha Khanna, Esq.; **GRANTS** Intervenor-Defendants' motion to intervene; and
8 **DENIES** Plaintiffs' motion for a preliminary injunction preventing the implementation of
9 AB 4.

10       DATED this  28th  day of  September , 2020.

                                         DISTRICT COURT JUDGE
12 Submitted by:                                  ROB BARE

13 AARON D. FORD
Attorney General
14 By: */s/ Gregory L. Zunino*
     GREGORY L. ZUNINO (Bar No. 4805)
15      Deputy Solicitor General
     State of Nevada
16      Office of the Attorney General
     100 N. Carson St.
17      Carson City, Nevada 89701
     Email: gzunino@ag.nv.gov
18
    *Attorneys for Defendant*
19
                Reviewed as to form and content by:
20
                                      Bradley S. Schrager, Esq., (Bar No. 10217)
21 Joel F. Hansen, Esq. (Bar No. 1876)     Daniel Bravo, Esq., (Bar No. 13078)
HANSEN & HANSEN, LLC                  3556 E. Russell Road, Second Floor
22 9030 W. Cheyenne Ave., #210              Las Vegas, Nevada 89120
Las Vegas, Nevada 89129                    bschrager@wrslawyers.com
23 jfhansen@hansenlawyers.com               */s/ Bradley S. Schrager*
                                              BRADLEY S. SCHRAGER
24 *Refused to sign*
JOEL F. HANSEN
25 *Attorneys for Plaintiffs*                    Abha Khanna - *Pro hac vice granted*
                                              PERKINS COIE LLP
26                                          1201 Third Avenue, Suite 4900
27                                          Seattle, WA 98101
                          *Attorneys for Proposed Intervenor-Defendants*
28                           *Institute for a Progressive Nevada and*
                          *Progressive Leadership Alliance of Nevada*