AARON D. FORD
 Attorney General
GREGORY L. ZUNINO, Bar No. 4805
 Deputy Solicitor General
CRAIG A. NEWBY, Bar No. 8591
State of Nevada
100 N. Carson Street
Carson City, Nevada 89701-4717
(775) 684-1237
glzunino@ag.nv.gov
cnewby@ag.nv.gov

*Attorneys for Barbara Cegavske*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| JILL STOKKE, an individual, CHRIS PRUDHOME, an individual, MARCHANT FOR CONGRESS, RODIMER FOR CONGRESS,<br><br>                    Plaintiffs,<br><br>vs.<br><br>SECRETARY OF STATE BARBARA CEGAVSKE, in her official capacity, and CLARK COUNTY REGISTRAR OF VOTERS JOSEPH P. GLORIA, in his official capacity,<br><br>                    Defendants. | Case No.  2:20-cv-02046-DJA<br><br>**OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

        Defendant Barbara Cegavske in her official capacity as Nevada Secretary of State, by and through counsel of record Gregory L. Zunino, Deputy Solicitor General and Craig A. Newby, Deputy Solicitor General hereby submit this opposition to Plaintiffs' Motion.

        DATED this 6th day of November, 2020.

                                AARON D. FORD
                                Attorney General
                                By:    *Craig A. Newby*
                                        GREGORY L. ZUNINO, Bar #4805
                                        Deputy Solicitor General
                                        CRAIG A. NEWBY, Bar #8591
                                        Deputy Solicitor General
                                        Tel: (775) 684-1237
                                        gzunino@ag.nv.gov
                                        cnewby@ag.nv.gov
                                *Attorneys for Defendant Barbara Cegavske, in her official capacity as Nevada Secretary of State*

-1-

Secretary of State Barbara Cegavske opposes Plaintiffs' Emergency Motion for Temporary Restraining Order and Preliminary Injunction. The Secretary's opposition is made and based upon all matters of record herein, the Memorandum of Points and Authorities submitted herewith, and upon such oral arguments as the court may allow at the time of hearing of this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Premised on purported violations of Nevada statute that were rejected in Nevada state district court and pending before the Nevada Supreme Court, Plaintiffs seek emergency relief from this federal court to stop Clark County's continued processing and counting of mail ballots. Instead of attempting to surmise how the Nevada Supreme Court would resolve Nevada law, this court should abstain from considering this case.

Even if this court chose to undertake an independent examination of Nevada law, nothing proffered by Plaintiffs requires injunctive relief. "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Here, the *Winter* factors, specifically Plaintiffs' unevidenced, unmeritorious legal arguments and the weighing of the public interest and the equities do not support granting injunctive relief.

### II.    REVIEW OF THE EMERGENCY MOTION AND THE UNDERLYING COMPLAINT

In their complaint, Plaintiffs Jill Stokke, Chris Prudhome, Marchant for Congress and Rodimer for Congress make unsupported allegations pertaining to Clark County's conduct of the 2020 election. *See* Compl. at ¶ 11.[1] In this motion, Plaintiffs make two sets of allegations.

First, Plaintiff Stokke alleges that someone else cast her mail vote without her knowledge, a potential felony under Nevada Revised Statute 293.775, when she

---

[1] Plaintiffs have not proffered evidence for these allegations and do not merit a response until or unless they do so.

-2-

attempted to early vote.[2] The Secretary of State's Office independently investigated Ms. Stokke's complaint. Rather than affirm that she had not submitted the mail ballot in writing (effectively challenging the prior vote) to receive a provisional ballot, Ms. Stokke refused because she did not feel she could implicate someone else for a crime. Instead of addressing this allegation on one ballot, Ms. Stokke seeks to stop all continued use of the Agilis machine on an emergency basis for Clark County in its entirety. This is absurd and must be rejected by this court.

Second, Plaintiff Prudhome, alleges that he was an observer for the Trump Campaign and a credentialed member of the media at the same time. *See* Prudhome Decl. at ¶ 2 (Trump observer), ¶4 (media).[3] Nevada statute specifically distinguishes observers from the media. NRS 293.274(3). Further, Nevada statute does not authorize observers or media to take pictures of the ballot counting. Instead, should the county record or photograph ballot counting, a registered voter may submit a request for any such recording or photograph. NRS 293B.353(3). After not being allowed to be a Trump observer and media at the same time, Prudhome alleges that Clark County staff told him "they would be counting for an hour and a half," but "after just a few minutes, they ordered all of us observers out." *Id.* at ¶ 6. He does not allege that the tabulation continued without observers that evening.[4] Based on that unstated and unsupported allegation, Prudhome seeks an injunction to "be required to allow meaningful access to

---

[2] Voting twice also violates Nevada statute. *See* NRS 293.780.

[3] Per internet research, Mr. Prudhome is the president of Sunvision Strategies, a firm that works on political and corporate strategies and strategic communications. He also works to engage millennials and minorities in the voting process and has appeared frequently on Fox News Channel. *See* https://www.foxnews.com/person/p/chris-prudhome

[4] Plaintiffs' counsel makes additional allegations pertaining to Mr. Prudhome without specifying how he would have "personal knowledge" of these items. *See* Mot. at 3:11-20. None of these allegations, such as an attempted denial of "entry to the office," screens being "all turned off and faced away from him," or election officials asking "law enforcement to remove him from the building," were attested to by Mr. Prudhome himself.

the ballot counting process." Mot. at 8:1-3. Clark County has already agreed to provide additional access, as part of a voluntary dismissal of a Nevada state court case.[5]

It is under these extraordinary circumstances that Plaintiffs seek extraordinary injunctive relief premised on this court's interpretation of Nevada statute. The court should abstain from doing so. Alternatively, Plaintiffs fail to meet their evidentiary burden to obtain extraordinary relief.

## III.   STANDARD OF REVIEW

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Plaintiffs otherwise correctly identify that they "must establish" four factors, including a likelihood of success on the merits.

## IV.   LEGAL ANALYSIS

### A.   Plaintiffs are Highly Unlikely to Succeed on their Speculative Claims, which Lack a Factual or Legal Basis[6]

First, Plaintiffs do not have a valid Elections Clause claim because Clark County's use of the Agilis machine complies with Nevada statute. Section 22(2)(a) of Assembly Bill 4 specifically allows Clark County's registrar to authorize "mail ballots to be processed and counted by electronic means." Section 23 does not specify by what method "the clerk or an employee in the office of the clerk shall check the signature used for the mail ballot," only that the first step shall be to "check the signature used for the mail ballot against all signatures of the voter available in the records of the clerk." This is exactly what Clark County does with its use of the Agilis machine. The state district court rejected this identical argument, finding it meritless. *See* October 29 Order at 12:20-24, a true and correct copy of which is attached hereto as **Exhibit B**.

---

[5] A true and correct copy of the Nevada Supreme Court filing is attached hereto as **Exhibit A**.

[6] Plaintiffs also contend that there are is no adequate legal remedy. Mot. at 6:18-23. Not true. Plaintiff Stokke has an adequate remedy at law pertaining to her vote – challenging the purportedly fraudulent valid under Nevada statute. Similarly, Plaintiff Prudhome has additional access to observe vote counting, based on the pending status of the Nevada state court case.

As addressed in the state court matter, the Agilis machine conducts this initial review, matching signatures approximately 30% of the time. The state district court, following a day-long evidentiary hearing, found "[n]o evidence was presented of any Agilis errors or inaccuracies." **Ex. B** at 4:14. "No evidence was presented that there is any indication of any error in Clark County's Agilis signature match rate." *Id.* at 4:14-16.[7] One unpursued ballot challenge by Ms. Stokke does not change this determination. The remaining 70% proceed through a detailed human review process that complies with Nevada law and has not been challenged by Plaintiffs in this case.

Second, Plaintiffs are unlikely to succeed on their Equal Protection claim. Nevada statute (namely Section 22 of Assembly Bill 4) allows each county clerk to decide whether or how to use "electronic means" to process ballots. This makes perfect sense in Nevada, which has two urban counties and fifteen rural counties, allowing each to determine what works best for their citizens. This constitutes a rational basis for the Nevada Legislature to empower each county to decide whether to use electronic means. Under rational basis review, legislation is presumed to be valid and will be sustained "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller v. Doe*, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). Nevada need not "produce evidence to sustain the rationality of a statutory classification," rather, "[t]he burden is on the one attacking the legislative arrangement to *negative every conceivable basis* which might support it." *Id.* (emphasis added). Assembly Bill 4 clearly complies with rational basis review. Further, as this Court has already concluded, a speculative prospect of voter fraud or vote dilution does not constitute an injury sufficient to confer standing upon a plaintiff or petitioner who alleges a violation of the Equal

---

[7] To be clear, Plaintiffs in the state court case challenged the scan resolution issue also raised by Plaintiffs in this case. *Compare* Compl. at ¶ 14 (scanning resolution allegation) with Nevada Supreme Court Emergency Motion (Nov. 3, 2020) at 8 (same), a true and correct copy of which is attached hereto as **Exhibit C**. Plaintiffs' counsel in this case is Petitioners' counsel in the state court case. Finally, the state court determined at the evidentiary hearing that one of Petitioners' attorneys knew Clark County intended to use the Agilis machine in advance of the general election. **Ex. B** at 4:5-6.

Protection Clause. *See Donald J. Trump for President, Inc.*, 2020 WL 5626974 at * 7; *Paher*, 457 F.Supp.3d at 926-27.

Third, Plaintiffs are unlikely to succeed on their ballot-counting access claim. As alleged by Plaintiff Prudhome, at most, he was denied less than 90 minutes of access to ballot counting. Further access has been supplied by Clark County in accordance with the Nevada state district court case.

**B.    The Balance of Other *Winters* Factors Weigh Strongly Against Injunctive Relief**

The other *Winters* factors favor denial of injunctive relief in this case. First, Plaintiffs' consideration of the relative harms relies completely on the assumption that Defendants are not complying with Nevada statute. Mot. at 7:1-4. The lack of merits has already been addressed.

Second, no consideration is given to the harms Defendants suffer from Plaintiffs' creation of unnecessary additional processing. Specifically, at the state court evidentiary hearing, the court found "that if Clark County is not allowed to continue using Agilis the county will not meet the canvass deadline." **Ex. B** at 4:17-20. Further, Section 23(4) of Assembly Bill 4 requires rejected signatures to be cured by November 12. Plaintiffs' proposed delay effectively eliminates voters' ability to cure any potential issues with their otherwise valid mail ballots, effectively disenfranchising them.

Third, enfranchising Nevada voters is in the public interest, particularly where Plaintiffs offer no evidence outside of one voter who refuses to challenger what she contends was her fraudulent ballot. Voting is at the heart of Nevada's government and evidence, rather than unsupported assertions, should be required to stop the counting of valid Nevada ballots.

…

…

…

…

**V.      CONCLUSION**

Nothing proffered by Plaintiffs as evidence warrants the extraordinary relief they seek. Accordingly, the emergency motion must be denied.

Dated this 6th day of November 2020.

AARON D. FORD
Attorney General

By:      *Craig A. Newby*
         GREGORY L. ZUNINO, Bar #4805
         Deputy Solicitor General
         CRAIG A. NEWBY, Bar #8591
         Deputy Solicitor General
         State of Nevada
         Nevada State Attorney General
         100 N. Carson Street
         Carson City, Nevada 89701
         Tel: (775) 684-1237
         gzunino@ag.nv.gov
         cnewby@ag.nv.gov

         *Attorneys for Defendant Barbara Cegavske, in her*
         *official capacity as Nevada Secretary of State*

**CERTIFICATE OF MAILING**

I certify that I am an employee of the Office of the Attorney General, State of Nevada, and that on this 6th day of November, 2020, I filed with this Court's CM/ECF electronic filing system, **MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION,** parties associated with this case will be served by this Court's electronic notification system.

_____
An employee of the Office
of the Attorney General

-8-