Robert Kern, Esq.
Nevada Bar Number 10104
**KERN LAW, Ltd.**
601 S. 6th Street
Las Vegas, NV 89101
(702) 518-4529 phone
(702) 825-5872 fax
Admin@KernLawOffices.com
Attorney for Amicus Curiae

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| JILL STOKKE, an individual, CHRIS PRUDHOME, an individual, MARCH FOR CONGRESS, RODIMER FOR CONGRESS,<br><br>Plaintiffs,<br><br>vs.<br><br>SECRETARY OF STATE BARBARA CEGAVSKE, in her official capacity, CLARK COUNTY REGISTRAR OF VOTERS JOSEPH P. GLORIA, in his official capacity,<br><br>Defendants. | Case No. 2:20-cv-02046- APG-DJA<br><br>**BRIEF OF AMICUS CURIAE OPPOSING THE GRANT OF A PRELIMINARY INJUNCTION** |

BRIEF OF AMICUS CURIAE

OPPOSING THE MOTION FOR PRELIMINARY INJUNCTION

BY CLARK COUNTY DEMOCRATIC PARTY

4

# I. TABLE OF CONTENTS

I. Table of Contents …………………………………………………..i, ii

II. Table of Authorities …………………………………………………ii

III. Statement of Amicus Curiae …………………………………….....8

IV. FRAP 29(a)(4)(E) Statement ………………………………………8

V. Argument ……………………………………………………….....8

    a. The Motion Does Not Satisfy the Requirements for a Preliminary Injunction……..……………………….....…………8

        1. Balance of Hardships Favors Denial……………………………9

        2. There is No Likelihood of Success on the Merits………………9

            A. There is No Subject Matter Jurisdiction…………..….9

            B. The Claim Does Not Satisfy Article III Justiciability..10

                i. Plaintiff Jill Stokke………………………..10

                ii. Plaintiff Chris Prudhome……………….....11

                iii. Campaign Plaintiffs Marchant and Rodimer………………………………...12

            C. There Are No Claims Upon Which Relief Could Be Granted……………………………………….....13

                i. Violation of the Elections Clause of the Constitution……………………….13

                ii. Equal Protection Claim ……………......…14

                iii. Violation of NRS 293.363 and AB4…….14

CONCLUSION ……………………………………………………15

VI. Certificate of Compliance ……………………………………………..16

## II. Table of Authorities

Allen v. Wright, 468 U. S. 737, 751 (1984)………………………………………9

Bender v. Williamsport Area School Dist , 475 U. S…………………………..9

Kokkonen v. Guardian Life Ins. Co. of America, 511 US 375 (US Sup.Ct 1994)……………………………………………………………………………... 9

Lujan v. Defenders of Wildlife, 504 US 555 (US Sup.Ct. 1992)…………10,11

McNutt v. General Motors Acceptance Corp., 298 U. S. 178, 182-183 (1936)……………………………………………………………………………..10

Simon v. Eastern Ky. Welfare Rights Organization, 426 U. S. 26, 41-42 (1976)……………………………………………………………………………..10

Turner v. Bank of North-America, 4 Dall. 8, 11 (1799)………………………10

Warth v. Seldin, 422 U. S. 490, 508 (1975) ………………………………...10

Willy v. Coastal Corp., 503 U. S. 131, 136-137 (1992)……………………..9

## REFERENCES

FRCP 12(b)(6),…………………………………………………………………....9

NRS 293.2546……………………………………………………………….....11

NRS 293.2546(1)………………………………………………………….....11

NRS 293.363……………………………………………………………………11

### III. Statement of Amicus Curiae

The Clark County Democratic Party is the officially sanctioned entity representing the Democratic Party in Clark County, Nevada. The present suit seeks to effectively halt vote counting in Clark County in order to prevent any clear determination of victory in Nevada by the Democratic candidate, Joe Biden. As Clark County is the County performing the voting, and the county whose votes are impacted, and the leading candidate is the candidate from the Democratic party, it is uniquely within the authority of the CCDP to speak on this issue, and to defend the votes of the democratic voters of Clark County, as well as the election integrity of Clark County. This brief argues for DENIAL of the motion for preliminary injunction.

### IV. FRAP 29(a)(4)(E) Statement

i. Counsel for CCDP authored this brief in its entirety.

ii. No party or its counsel contributed money or anything else of value to fund preparing this brief.

iii. No person or entity outside of CCDP contributed money intended to fund the preparing of this brief.

### V. **ARGUMENT**

The number of fatal deficiencies in the present suit and motion is vast. The balance of hardships weighs heavily against the grant of any motion, there is clearly no Federal subject matter jurisdiction, there is no Article III case or controversy sufficient to establish standing of any of the Plaintiffs, and even if the Court were to review the substantive claims, none of them present even an imaginable viable legal claim.

**a.      The Motion Does Not Satisfy the Requirements for a Preliminary Injunction**

7

Plaintiffs' motion properly listed the factors to be considered in issuing a preliminary injunction. For the sake of brevity, CCDP will focus on the essentially contested elements of the balance of hardships, and likelihood of success.

### 1. Balance of Hardships Favors Denial

First, to be granted a preliminary injunction, the balance of hardships must favor the grant. Here we have a request that would likely result in the effective halt of vote counting, and likely prevent all votes from being counted prior to the statutory deadline. Clark County's vote counting plan is likely to be based upon the systems they currently have in place. Requiring them to halt using their current system, and come up with a new system, immediately without preparation, and to carry on by hand, would almost certainly result in enough delay to push the counting past the statutory deadline of November 12, thus having the effect of preventing significant numbers of Clark County residents from having their votes counted. Beyond that, this would have the effect of halting the determination of the next president of the United States, and likely cause a national crisis. Weighed against this, is Plaintiffs' abstract claim of a loss of voting rights, without any explanation as to exactly how a denial of the injunction would infringe upon those rights, or how a grant would protect them in anything but the most abstract way. It is the movant's burden to show that the balance of hardships favors them, and neither their Complaint, nor their motion, nor their declaration gives the slightest explanation of how the alleged voting rights would be infringed in the absence of an injunction. It is thus clear that the balance of hardships must oppose the grant of an injunction.

### 2. There is No Likelihood of Success on the Merits

#### A. There is No Subject Matter Jurisdiction

8

Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 US 375 (US Sup.Ct 1994); see *Willy* v. *Coastal Corp.,* 503 U. S. 131, 136-137 (1992); *Bender* v. *Williamsport Area School Dist* , 475 U. S. 534, 541 (1986). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 US 375 (US Sup.Ct 1994); *Turner* v. *Bank of North-America,* 4 Dall. 8, 11 (1799); *McNutt* v. *General Motors Acceptance Corp.,* 298 U. S. 178, 182-183 (1936).

Review of the Complaint makes clear that the Plaintiffs have failed their burden to establish the subject matter jurisdiction of this Court. All the claims presented are state law claims, loosely clothed with a few words tying them to Constitutional claims. The two alleged federal question claims are violation of the elections clause of the Constitution, and violation of equal protection, and neither is a true claim under federal law.

The elections clause simply requires that the states determine how elections will happen in each state. There is no allegation that this did not occur. The entire body of this 'claim' argues that Defendants wrongfully violated state election statutes. This claim being considered a federal question is pure sophistry.

The equal protection claim, simply argues that the verification system used was not a good one, without giving any explanation of how this would cause the laws to apply unequally to any classes of persons. Without any legitimate federal questions, and without any claim of diversity jurisdiction, Plaintiffs can not establish federal jurisdiction.

**B. The Claim Does Not Satisfy Article III Justiciability**

Determination of standing is an essential precursor to the jurisdiction of a Federal Courts pursuant to the case or controversy requirement of Article III of the Constitution. The Constitutional minimum showing of standing requires three elements; 1) the Plaintiff must have suffered an "injury in fact", which is concrete, particularized, and actual or imminent, 2) there must be a causal connection between the injury and the conduct complained of, and 3) it must be likely (rather than speculative) that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 US 555 (US Sup.Ct. 1992); *Allen* v. *Wright,* 468 U. S. 737, 751 (1984); *Warth* v. *Seldin,* 422 U. S. 490, 508 (1975); *Simon* v. *Eastern Ky. Welfare Rights Organization,* 426 U. S. 26, 41-42 (1976). Further, the party invoking Federal jurisdiction bears the burden of proof of these elements, and "[s]ince they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Lujan v. Defenders of Wildlife*, Id. at 561. Review of the facts of this case make clear that none of the Plaintiffs meet those requirements.

      i.    Plaintiff Jill Stokke

Plaintiffs allege that Plaintiff Stokke was prevented from legally voting, a seemingly serious allegation. Plaintiffs allege, upon information and belief, that this was caused by using an automatic signature verification system. While deprivation of the right to vote may be an injury, there is no concrete causality shown between such injury and the use of Clark County's verification system, and no indication as to what was done after the initial refusal[1]. Most significantly, none of the relief prayed for in the Complaint, nor sought in the preliminary injunction, would redress this issue. Thus Stokke is

---

[1] If Clark County responded to the issue by doing an in-person review of the signature in question, then there can be no causality attributed to the electronic verification system, since it did not make the final decision.

10

clearly unable to establish the second and third elements of standing, and thus can not invoke the jurisdiction of this Court.

        ii.       Plaintiff Chris Prudhome

Plaintiffs allege that Plaintiff Prudhome attempted to enter a voting facility after midnight, and was told he could not enter because they had closed for the night. There are no allegations that Prudhome attempted entry at any other time, nor that he was rejected entry at any other time, nor that the reason for his rejection was anything other than the location being closed for the night. There is no clear injury to Prudhome whatsoever, as he has not claimed any cognizable personal right that was infringed by not being allowed into a voting center while it was closed. As discussed below, his argument that the rule against "adjournment" prevents any recess for workers to rest is apparently based upon a misconception of the definition of 'adjournment', as opposed to 'recess'. Because he has not attempted entry since, any suggestion that he would not be allowed entry is purely speculative. Without an injury in fact, the first element, Prudhome can not establish the second element, being a causation of such an injury. Prudhome is also unable to establish the third element, because there is no allegation that he can not currently enter the counting location thus the only injury is the inability to enter in the past – something the Court in unable to remedy with injunctive relief. Prudhome is clearly unable to establish any of the elements of standing, and thus can not invoke the jurisdiction of this Court.

        iii.       Campaign Plaintiffs Marchant and Rodimer

Neither of the campaign Plaintiffs have alleged any specific injury, nor any causality of such an injury, nor any redress they would gain from a positive result of the present case. For this reason there can be no claim that either of the campaign Plaintiffs have standing, and no claim that they have the ability to invoke the jurisdiction of this Court.

11

As none of the Plaintiffs have shown a claim that can establish the requirements of Article III justiciability, and they bear that legal burden as a prerequisite to invoking the power of the Federal Courts, the matter is almost certain to be dismissed, and thus does not have a remote likelihood of success on the merits.

### C. There Are No Claims Upon Which Relief Could Be Granted

Even if the Court were to move past the jurisdictional hurdles and evaluate the claims substantively, each clearly fails to even meet the loose standard of FRCP 12(b)(6), and thus the claims are likely to be dismissed, and not likely to achieve success on the merits.

        i.      Violation of the Elections Clause of the Constitution

First and foremost, this claim fails because it does not even allege that the Elections clause of the Constitution was violated, nor how any Plaintiff would have standing to oppose such a violation if it were alleged. Plaintiffs instead twist their reasoning to attempt to argue that the use of an electronic signature verification system constitutes a violation of NRS 293.2546, and that somehow this violation constitutes preventing the government of the states from establishing its own guidelines for holding elections.

Plaintiffs point to the language of NRS 293.2546(1) requiring a "uniform, statewide standard for counting and recounting all votes accurately", and suggest that the fact that Clark county uses a different method of signature verification than the smaller counties in the state, constitutes a violation. The two most obvious problems with this reasoning are, that a standard for "counting and recounting" votes, is not the same as a standard for verifying signatures on votes. The only allegation is a deficiency in the method used to verify signatures, and no allegation regarding any method or system of vote counting, so this provision would clearly not apply. The second issue is that

the new statute cited by Plaintiff, AB4 (2020), clearly authorizes the use of electronic systems to process votes. Section 22 of that bill states:
> 1. For any affected election, the county or city clerk, as applicable, shall establish procedures for the processing and counting of mail ballots.
> 2. The procedures established pursuant to subsection 1:
> **May authorize mail ballots to be processed and counted by electronic means** (emphasis added).

Section 23 makes clear that the signatures to be used for comparison are to be taken from "all signatures of the voter available" to the clerk. Thus the use of DMV signatures is appropriate if those are the signatures available. As the practices complained of are specifically authorized, no claim that they are illegal can hold merit.

    ii. Equal Protection Claim

  Plaintiffs' equal protection claim is based upon the fact that Clark County used the electronic signature verification system to verify signatures, rather than live persons. The first issue is that neither Defendant can be held liable for such an action. Defendant Barbara Cegavske is the Secretary of State, and not alleged to be responsible for establishing Clark County's vote verification systems, thus she can not be considered to be a party violating equal protection. The second Defendant, Joesph Gloria, is the Registrar of Voters in Clark County; he is responsible for managing the verification system in Clark County, however he controls ONLY Clark County, thus, if the claim is that Clark County voters are treated differently from other Nevada voters, it is impossible for him to have policies that treat those classes of voters differently, because his policies only affect Clark County voters.

  Even if the Defendants would be appropriate defendants for such a claim, there is simply no basis given to reach a conclusion that any statute, rule, or policy has any discriminatory intent or effect, nor any allegation that

any suspect class is affected. Thus the only scrutiny level would be rational basis, which is satisfied simply by observing the state interest in efficient processing of ballots.

          iii.     Violation of NRS 293.363 and AB4

Plaintiffs' claim that requirements for public access to vote counting are without merit. The statutes require that the process of ballot-counting be "public" and that it "not adjourn" until complete. First, the fact that a single person was unable to gain entrance to the counting facility after midnight, when it was closed, does not constitute a violation of the "public" requirement. Public does not mean anyone can wander in unsupervised at any time, it means that there are systems in place for designated observers, and that the process is transparent. Plaintiffs have made no showing that Prudhome attempted entrance at any other time, nor that he was refused entrance at any other time. Thus his inability to enter while the site was closed can not constitute a violation of the "public" requirement for vote counting.

Plaintiffs also seem to suggest that the fact that the site closed at all was a violation of the requirement "not to adjourn". This indicates that Plaintiffs are not familiar with the difference between 'adjournment' and 'recess'. The Law.com legal dictionary defines adjourn as follows:

> **adjourn**
> v. the ***final*** closing of a meeting, such as a convention, a meeting of the board of directors, or any official gathering. ***It should not be confused with a recess, meaning the meeting will break and then continue at a later time.*** (Emphasis added).

It seems clear that not allowing poll workers to rest or sleep anytime in the four days thus far of vote counting would be an unreasonable interpretation, and the fact that counting has not concluded makes clear that the break referenced was a recess, and not an adjournment, and thus not a violation of that statutory language.

14

## CONCLUSION

As the balance of hardships weighs overwhelmingly against an injunction, and there is neither subject matter jurisdiction, nor standing, to bring this claim, and no merit to the claims regardless, CCDP argues that the motion for preliminary injunction should be denied, so that the voters of Clark County may have their votes counted in the eletion of the next President of the United States.

DATED this 6th day of November, 2020.

**KERN LAW**

By: ____/s/ Robert Kern____
_____  Robert Kern, Esq.
NV Bar #10104
601 S. 6th Street
Las Vegas, NV 89101
(702) 518-4529
*Attorney for Clark County Democratic Party*

## VI. ATTORNEY'S CERTIFICATE OF COMPLIANCE

1. I hereby certify that this brief complies with the formatting requirements of NRAP 32(a)(4), the typeface requirements of NRAP 32(a)(5) and the type style requirements of NRAP 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word 97 in Times New Roman 14pt type.
2. I further certify that this brief complies with the page- or type-volume limitations of NRAP 32(a)(7) and NRAP 29(a)(5) because, excluding the parts of the brief exempted by NRAP 32(a)(7)(C), it is proportionately spaced, has a typeface of 14 points or more, and contains less than 3,289 words, which is less than half the length available for a principal brief.

DATED this 6th day of November, 2020.

                                **KERN LAW**

                By: ___/s/ Robert Kern_____
                      Robert Kern, Esq.
                      NV Bar #10104
                      601 S. 6th Street
                      Las Vegas, NV  89101
                      (702) 518-4529
                      Attorney for CCDP